Vanessa R. Waldref
United States Attorney
Eastern District of Washington
David M. Herzog
Brandon L. Pang
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | Case No.: 4:22-CR-6038-MKD-1 |
|---|---|
| Plaintiff, | United States' Opposition to Motion to Suppress Evidence and Request for a *Franks* Hearing |
| v. | |
| REX MICHAEL KERN, JR., | Hearing: |
| Defendant. | July 27, 2023, at 1:30 p.m. Richland, Washington |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and David M. Herzog and Brandon L. Pang, Assistant United States Attorneys, hereby submits the United States' opposition to the *Franks*/suppression motion filed by Defendant Rex Michael Kern, Jr. ("Defendant") in the above-captioned matter.  ECF No. 53.

Defendant has failed to make a substantial preliminary showing that any affiant officer intentionally or recklessly made false or misleading statements or omissions in support of any warrant or that any false or misleading statement or omission was material.  Accordingly, Defendant's motion to suppress should be denied, and no evidentiary hearing is warranted.

United States' Opposition to *Franks*/Suppression Motion – Kern – i

Even if the Court were to order a *Franks* hearing, it is difficult to see how any testimony from the affiant officers would undermine the issuing judge's conclusions that the warrant applications were sufficiently supported by probable cause. A common sense, totality-of-the-circumstances reading of the warrant applications makes it clear that probable cause existed for each warrant to issue.

Finally, the *Leon* good faith exception saves any potential infirmities in the warrants themselves, because there is nothing in this record or Defendant's briefing that would undermine the executing officers' good faith reliance on the issuing judge's findings of probable cause.

In sum, Defendant has failed to establish the need for a *Franks* hearing, the warrantless searches fell under recognized exceptions to the Fourth Amendment and all of the evidence would have been inevitably discovered, the warrants were supported by probable cause, the good faith exception applies, suppression is unwarranted, and Defendant's motion should be denied.

The United States' position is based on the attached memorandum of points and authorities, the files and records in this case, and any further evidence and argument the Court may permit.

Dated: July 13, 2023

Vanessa R. Waldref
United States Attorney

*s/ David M. Herzog*
David M. Herzog
Brandon L. Pang
Assistant United States Attorneys

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

Defendant Rex Michael  Kern Jr. ("Defendant")'s *Franks*/suppression states no legally cognizable challenges to the searches in this case, much less any challenge strong enough to warrant a *Franks* hearing.  Not only did officers articulate probable cause for each search warrant, they repeatedly went back for amended search warrants whenever items exceeded the scopes of their original applications.  Their affidavits established probable cause by tying the particular scope and locations of their requested search authority to their training and experience and the specific facts they faced.  Any reasonable judge – including the judge here – had substantial bases for concluding that probable cause existed.

Defendant has not made a substantial preliminary showing of any material, intentional, recklessly false, or misleading statements or omissions.  Even if he had, the good faith exception applies, because the officers who executed the warrants had no reason to doubt that they could rely on the judge's findings of probable cause.  Thus, there is no need for a *Franks* hearing, and no basis on which to suppress any of the evidence obtained in this case.  Defendant's motion should be denied without an evidentiary hearing.

### II.    Facts Relevant To Defendant's Motion To Suppress

A number of searches took place in this case, in February and July of 2022, revealing in significant amounts of illegal drugs and firearms in the possession of Defendant, who is a felon.  Each search was supported by an exception to the warrant requirement or an independent finding of probable cause by a detached and neutral judge and the issuance of a valid search warrant.

#### A.    Traffic Stop of the Stolen Hyundai in February 2022

The facts appear to be undisputed, and for purposes of this motion are drawn from the relevant reports and affidavits, which Defendant has submitted to the Court at ECF No. 53 and attachments.

On February 11, 2022, at around 3:00 a.m., Defendant sat stationary in a white Hyundai hatchback, at a four-way-stop intersection in Walla Walla.  ECF No. 53-1 at 5.  No other vehicles were present, and Defendant, who was alone in the car, did not have either turn signal on.  *Id.*  As Walla Walla Police Department ("WWPD") Patrol Sergeant Kevin Bayne approached in a marked police car, Defendant did not proceed immediately through the intersection.  *Id.*  That caught Sgt. Bayne's attention, and he ran the license plates of the Hyundai through the mobile computer terminal in his police vehicle.  *Id.*

Sgt. Bayne learned that the Hyundai had been reported stolen out of Spokane.  *Id.*  Sgt. Bayne called for backup and conducted a traffic stop of Defendant.  *Id.*  Sgt. Bayne told Defendant he was being detained for investigation into a stolen car.  *Id.*  Defendant identified himself as Rex Kern and said that he had just purchased the car from Scorpio Ramirez or Rodriguez, who was the younger brother of Defendant's friend Tigger.  *Id.*  Sgt. Bayne knew these individuals as Tigger Janson and Scorpio Rodriguez.  *Id.* at 5-6.

WWPD dispatch confirmed that the Hyundai had been reported stolen out of Spokane, and that its owner had consented to it being searched by law enforcement if it was recovered.  *Id.* at 6.  Defendant asked to speak with his attorney, and was arrested for possession of a stolen vehicle.  *Id*.  WWPD Officer Silva searched Defendant incident to arrest, recovered various keys, and transported him to jail so he could contact his attorney.  *Id*.  Sgt. Bayne called for an investigatory tow.  *Id*.

### 1.    Consent Search of Stolen Hyundai

Having confirmed that the Spokane Police Department had obtained consent from Keyana Tonasket, the Hyundai's registered owner, for law enforcement to search the Hyundai if it was recovered, Sgt. Bayne searched the Hyundai with two other officers.  *Id.*  They located backpacks and bags, a nail gun on the passenger side floorboard, plastic containers, and a safe in the trunk.  *Id.*  Officers did not open the closed or locked items.  *Id.*

United States' Opposition to *Franks*/Suppression Motion – Kern – 2

Sgt. Bayne later reviewed the Spokane Police Department stolen vehicle report, which indicated that it had been reported stolen out of Spokane about two weeks earlier by Ms. Tonasket. *Id.* According to the report, she believed that it had been stolen by Scorpio Rodriguez, with whom she shares children. *Id.*

### 2. K-9 Dog Sniff of Stolen Hyundai

Sgt. Bayne knew that Defendant's criminal history included controlled substance offenses, and that stolen property, including stolen vehicles themselves, are often used as currency or trade value to pay drug debts or purchase narcotics. *Id.* at 6-7; ECF No. 53-2 at 8. Sgt. Bayne believed that inside the Hyundai would be evidence of sale, trade, ownership and/or transaction for the car itself between Defendant and Scorpio Rodriguez, and that there was also a likelihood that there would be drug evidence in the Hyundai, "for the same reasons." *Id.* He also articulated that a credible and reliable source had indicated to WWPD that Defendant was involved in "significant street level sales in the Walla Walla area." ECF No. 53-1 at 7; ECF No. 53-2 at 8-9. Sgt. Bayne requested that WWPD Ofc. Eastman apply the K-9 narcotics dog, Watts, to the Hyundai. *Id.* Ofc. Eastman did so; Watts did not alert to the scent of drugs. *Id.*

### 3. Initial Search Warrant for the Stolen Hyundai and Stolen Property, but not Drugs or Guns

WWPD Detective Luke Watson received the above information from Sgt. Bayne, and authored the initial search warrant for the Hyundai. ECF No. 53-2 at 5-10.[1]

---

[1] Det. Watson authored affidavits for searches in this case on or about February 11, 2022. In September 2022, a United States District Judge made an adverse credibility determination against Det. Watson. *See United States v. Cunha*, No. 4:21-CR-06037-MKD-1, ECF No. 75. The United States is currently seeking interlocutory appeal. *See* Ninth Circuit Case No. 22-30166. The United States is not aware of any adverse credibility determinations made by a judicial officer against Det. Watson at the time he submitted the affidavits in this case.

Det. Watson sought authority to search the Hyundai and "bags, backpacks, containers, locked compartments, safe" inside it. *Id.* at 9. He limited the scope of the initial application to stolen vehicle and property evidence. *Id.* at 9-10. He did *not* seek authority to search for drug evidence at that time. *Id.* He was also personally familiar with Defendant and his prior unlawful possession of drugs and guns, and he included this information in the initial warrant application. *Id.* at 8-9. Thus, in addition to the information set forth above from Sgt. Bayne, Det. Watson included the following in his affidavit:

- He had previously investigated Defendant;
- Defendant had convictions for burglary, possession with intent to deliver controlled substances, and unlawful possession of firearms;
- Defendant was currently charged with possession with intent to deliver methamphetamine in Walla Walla Superior Court case 2020-22658;
- He had learned from various sources of information that Defendant was actively dealing drugs, including methamphetamine and fentanyl; and
- People who deal controlled substances often take stolen property as currency. *Id.*

Det. Watson also specifically included in the affidavit the information that the K-9, Watts, had not alerted to the scent of drugs in the Hyundai. *Id.* at 9.

Det. Watson also noted in his affidavit that when looking into the Hyundai from the outside, he saw a pneumatic nail gun on the front passenger floorboard, consistent with Sgt. Bayne's report, along with several other items that Sgt. Bayne had identified. *Id.* at 9. Det. Watson asserted that there had been recent construction site burglaries in the area, during which tools and equipment had been taken, overnight, in darkness. *Id.* Det. Watson did not know Defendant to be in construction, but did know that Defendant had a prior burglary conviction and had been contacted at 3am in a stolen vehicle. *Id.* Det. Watson stated his belief that the nail gun and other items in the Hyundai had possibly been stolen. *Id.*

United States' Opposition to *Franks*/Suppression Motion – Kern – 4

Det. Watson also noted that the registered owner of the stolen car had indicated that Scorpio Rodriguez had taken it on January 27, 2022, and that Scorpio Rodriguez was the person from whom Defendant claimed to have purchased the vehicle. *Id.* Based on his prior investigations, training, and experience, Det. Watson asserted that within the Hyundai, there would be "documentation in the form of receipts, bill of sale, identification, bank cards, or other types of paperwork to corroborate who was in possession of the stolen vehicle over the past couple weeks" and that "items showing evidence of subjects involved in these noted violations will be in the bags, backpacks, containers, and / or the safe within the stolen vehicle." *Id.* Det. Watson sought, at that time, only authority to search for items consistent with stolen vehicle and stolen property crimes, not drug or firearm offenses. *Id.* at 9-10.

Walla Walla District Court Judge Kristian Hedine found that the affidavit contained sufficient probable cause to search, and signed the initial warrant. *Id.* at 3-4. Detectives Watson and Bump went to the impound lot to serve the warrant for stolen vehicle and stolen property offenses, and located the following:

- A portable vacuum, a tool set, and tote of clothing;
- A .22 caliber pump action rifle with a brown wooden pump grip and stock;
- In the safe, which they opened using the key recovered from Defendant, the black hand grip of a pistol in a holster; and
- In the safe, a clear white case that appeared to contain a digital scale, with white residue on the inside of the clear case.

*Id.* at 23-24. Detectives Watson and Bump stopped searching, and Det. Watson submitted an amended warrant application to Judge Hedine. *Id.*

### 4.    Amended Search Warrant That Expanded the Scope of the Search to Include Gun and Drug Evidence

In Det. Watson's amended warrant application, he sought to expand the scope of the search to include the gun and drug evidence that had been located

during the initial search, but was outside its scope. *Id.* at 23-25. His amended application included all of the information from his initial application, along with the new gun and drug evidence that the officers had located during the execution of the initial search. *Id.* Det. Watson also included in the amended application his assertions that the digital scale appeared to be of the kind used to weigh controlled substances such as methamphetamine, and that the white powder observed on the case enclosing the scale appeared to be a controlled substance such as methamphetamine. *Id.* at 23-24.

Judge Hedine found that probable cause existed to support the expanded scope of the amended warrant, and authorized the search and seizure of not only documents and evidence related to stolen vehicle and/or stolen property, but also drug and gun evidence from within the Hyundai. *Id.* at 25. In a pouch in the safe, WWPD recovered $2,700 in cash, along with methamphetamine that has since been tested by the DEA Western Laboratory and has been confirmed to be two baggies containing 317 and 118 grams of pure methamphetamine, respectively.

## B. Searches of Defendant's Mustang in July 2022

Defendant was charged with state offenses based on the evidence above, and was released on pretrial supervision. ECF No. 53-1 at 21. In July 2022, WWPD again encountered him with drugs and guns in a car in Walla Walla. *Id.*

### 1. Arrest of Defendant on Confirmed Felony Warrant and Search Incident to Arrest

On July 21, 2022, at around 3:00 p.m., WWPD Officer Nick Klicker was on regular uniformed patrol in Walla Walla. *Id.* He saw Defendant walking back and forth between two vehicles, a green Jeep Liberty and a grey Ford Mustang, and was going in and out of each vehicle. *Id.* Earlier in his shift, Ofc. Klicker had seen that Defendant had an unconfirmed felony warrant out of the Walla Walla Superior Court. *Id.* Ofc. Klicker asked WWPD dispatch to confirm the felony warrant, which it did. *Id.*

After backup personnel arrived, the officers informed Defendant that he had a confirmed warrant, arrested him, and searched him incident to arrest. *Id.* Defendant had on his person the key/fob for the Jeep, a green glass pipe consistent with methamphetamine use, brass knuckles, and $94 in cash. *Id.* Defendant expressed concerns about the Mustang, which was on and idling; when Ofc. Klicker first contacted Defendant, he had been trying to get into the Mustang. *Id.* Defendant was very concerned about the Mustang, and wanted to make sure that someone could come pick it up. *Id.* Ofc. Klicker got Defendant into the patrol car safely, and went over to inspect the Mustang from the outside. *Id.*

### 2.     Defendant's Drug Paraphernalia in Plain View

From the outside of the Mustang, Ofc. Klicker saw in plain view a backpack on the front passenger seat, which appeared to contain two pipes consistent with marijuana use, and a small ziplock baggie that appeared to be individually packaged marijuana. *Id.* In the backseat, Ofc. Klicker saw a black and silver lock box, which was of interest because he knew that Defendant was on pretrial release for the February 2022 conduct set forth above, and in that case, Defendant had a lock box that contained a firearm and a large amount of methamphetamine. *Id.* Ofc. Klicker knew that people who deal or sell narcotics carry locking-type containers to protect the valuable contents of their controlled substances. *Id.*

Ofc. Klicker learned from Defendant that the Mustang was his, and confirmed that it was registered to him. *Id.* at 22. Defendant was transported to jail, and officers asked Richard Cromwell, the owner of the property on which the Mustang was parked, for consent for a K-9 dog sniff of the Mustang. *Id.* Mr. Cromwell denied consent after speaking with Defendant's attorney, William McCool. *Id.* at 22, 25.

WWPD then applied to Judge Hedine for a search warrant for drug offenses that would include authorization for a K-9 dog sniff of the Mustang. *Id.* at 22.

### 3.     Initial Search Warrant and Dog Sniff for Drug Evidence

In his initial warrant affidavit, Ofc. Klicker included all of the information set forth above, other than the fact that the property owner had denied consent for the dog sniff.  ECF No. 53 at 34.  Judge Hedine found probable cause existed to support a search of the vehicle for drug offenses, and issued the warrant.  *Id.* at 36-37.  K-9 Watts alerted to the presence of drugs in the Mustang, and WWPD arranged for a tow to the WWPD tow yard.  ECF No. 53-1 at 22.

The next morning, WWPD officers executed the search warrant on the Mustang for drug offenses.  *Id.*  While searching for drug evidence, they found a black semi-automatic pistol in the backpack on the front passenger seat, along with substances that appeared to be methamphetamine and fentanyl, and a large amount of cash.  ECF No. 53-1 at 27.  They left the firearm in place; it was outside the scope of the initial drug warrant.  *Id.*

WWPD Officer Sara Thompson continued searching pursuant to the original drug warrant.  *Id.*  In the silver case in the back seat of the Mustang, she recovered a second black semi-automatic firearm, along with a bag of bullets and two magazines, one of which was loaded with 9mm bullets.  *Id.*  Ofc. Thompson left this firearm evidence in place; it was outside the scope of the drug warrant.  *Id.*  WWPD Officer Saul Reyna confirmed that Defendant had a felony that would prohibit him from possessing firearms legally, and submitted an amended search warrant to Judge Hedine that would expand the scope of the search from drug evidence to drug *and* gun evidence in the Mustang.  *Id*; ECF No. 53-2 at 41-43.

### 4.     Amended Search Warrant For Drug and Gun Evidence

Ofc. Reyna's application for the amended warrant included the information that while executing the drug warrant, officers had located the gun in the backpack.  ECF No. 53-2 at 42.  Judge Hedine found probable cause and signed the amended search warrant, authorizing a search of the Mustang for both drug and gun evidence.  *Id.* at 43.  WWPD executed the amended warrant and recovered both

United States' Opposition to *Franks*/Suppression Motion – Kern – 8

black 9mm semi-automatic pistols, along with ammunition and magazines.  ECF No. 53-2 at 47.  The gun in the backpack had a round in the chamber and a full magazine.  *Id.*  They also recovered more than $3,900 in cash, and methamphetamine and fentanyl that have been tested and confirmed as 262 grams of pure methamphetamine and 638 pills containing fentanyl.

## III.    Relevant Law

Under *Franks*, a search warrant must be voided and the fruits of the search excluded only if a defendant shows that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).  To obtain a *Franks* hearing to "determine the validity of the affidavit underlying a search warrant", *United States v. Norris*, 942 F.3d 902, 909-10 (9th Cir. 2019) (quotation, alteration, and citation omitted) a defendant must first make a substantial preliminary showing that: (1) "the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant," and (2) "the false or misleading statement or omission was material, i.e., necessary to finding probable cause." *Id.*  (quotation and citation omitted).  Reviewing courts normally do not "'flyspeck' the affidavit supporting a search warrant through de novo review; rather, the magistrate judge's determination should be paid great deference." *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (citing and quoting *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc) and *Illinois v. Gates*, 462 U.S. 213 (1983)).

This case does not present a close call, but even if it did, "[i]n borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it." *United States v. Martinez*, 588 F.2d 1227, 1234 (9th Cir. 1987); *see Gates*, 462 U.S. at 237 n.10 (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)) ("Although in a particular case it may not be easy to determine when an

affidavit demonstrates the existence of probable cause, resolution of doubtful or marginal cases in this area should largely be determined by the preference to be accorded to warrants.").

If a district court grants a *Franks* hearing, the defendant "must establish both [*Franks*] prongs by a preponderance of the evidence." *Id.* at 910 (citing *United States v. Martinez-Garcia*, 397 F.3d 1205, 1214–15 (9th Cir. 2005)). To satisfy the first *Franks* prong, "the defendant must show by a preponderance of the evidence that the affiant knowingly and intentionally, or with reckless disregard for the truth, made false or misleading statements or omissions in support of the warrant application." *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (citing *Martinez-Garcia*, 397 F.3d at 1214). Notably, "[a] negligent or innocent mistake does not warrant suppression." *Id.* (citing *Franks*, 438 U.S. at 171).

To satisfy the second *Franks* prong, "the question is whether the omitted fact is 'material'; that is, whether it is 'necessary to the finding of probable cause.'" *Id.* at 1119 (quoting *Franks*, 438 U.S. at 156). Probable cause, in turn, means that "there is fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 213. That standard "is not terribly demanding," *United States v. Collins*, 427 F.3d 688, 691 (9th Cir. 2005), and does not impose "a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

In determining materiality, "[t]he key inquiry is 'whether probable cause remains once the evidence presented to the magistrate judge is supplemented with the challenged omissions.'" *Id.* (quoting *United States v. Ruiz*, 758 F.3d 1144, 1149 (9th Cir. 2014)). "If probable cause remains, the defendant has failed to establish a material omission." *United States v. Norris*, 942 F.3d 902, 910 (9th Cir. 2019) (citing *Perkins*, 850 F.3d at 1119).

Search warrant affidavits "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion" and not invalidated "by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Ventresca*,

380 U.S. at 108-109.  Affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation.  Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.  A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."  *Id.*

## IV.    Argument

Defendant has failed to make a substantial preliminary showing of any intentional or recklessly made false or misleading statements or omissions in support of any initial or amended warrant, or that any false or misleading statement or omission was material.  Defendant's motion to suppress fails at the first *Franks* stage, and no evidentiary hearing is warranted.

Even if the Court were to order a *Franks* hearing, it is difficult to see how any officer testimony would undermine the issuing judge's conclusions that the warrants were sufficiently supported by probable cause.  A common sense, totality-of-the-circumstances reading of the applications makes it clear that probable cause existed for each warrant to issue.  In addition, the inevitable discovery doctrine applies to the evidence from the warrantless searches because it would have been found by virtue of WWPD's impound procedures, and the *Leon* good faith exception applies to any potential infirmities in the warrants.  There is nothing in this record that meaningfully undermines any officers' good faith reliance on Judge Hedine's findings of probable cause.

In sum, it is difficult to see what these officers could or should have done differently: each search was supported by an exception to the warrant requirement or was conducted in good faith on a properly-issued warrant.  Repeatedly, when officers found evidence outside the scope of a warrant they were executing, they sought amended warrants.  Defendant's challenges are unsupported by a single citation to a case in which a court has suppressed evidence based on factually

similar circumstances.  To the contrary, all relevant caselaw supports the admission of the challenged evidence, and Defendant's meritless motion should be denied.

### A.     The Traffic Stop Was Not Unreasonably Prolonged

Defendant complains that he was detained for an unreasonably long time after being stopped.  ECF No. 53 at 6-8.  But the cases he cites stand for the uncontroversial proposition that police may not prolong a completed traffic stop, absent reasonable suspicion, in order to conduct checks unrelated to the traffic violation.  *Rodriguez v. United States*, 575 U.S. 348, 355-56 (2015) (unrelated dog sniff); *United States v. Evans*, 786 F.3d 779, 786 (9th Cir. 2015) (unrelated dog sniff and ex-felon registration check).

That is not what happened here.  Unlike the defendants in *Rodriguez* and *Evans*, Defendant was stopped because the car he was driving *returned as a stolen vehicle* when Sgt. Bayne ran its license plate number through his mobile computer unit.  *See* ECF No. 53-1 at 5 ("I told him the vehicle was returning as stolen out of Spokane and he was detained for investigation of possession of a stolen vehicle.").  Defendant was thus stopped based on suspicion that he had committed the crime of possessing a stolen vehicle, rather than for a non-criminal traffic infraction for which the reasonable duration of the stop would be limited to the issuance of a traffic citation, as in *Rodriguez* and *Evans*.  As Defendant acknowledges, the rule of *Rodriguez* is that an officer needs *reasonable suspicion* to prolong a traffic stop.  *Rodriguez*, 575 U.S. at 355 ("An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, *absent the reasonable suspicion ordinarily demanded to justify detaining an individual*.") (emphasis supplied).

Here, Sgt. Bayne had more than reasonable suspicion to justify the prolonging of the stop past the issuance of a citation; he had probable cause to arrest Defendant as soon as he received the report on his mobile terminal that the car had been stolen.  *Rohde v. City of Roseburg*, 137 F.3d 1142, 1144 (9th Cir.

United States' Opposition to *Franks*/Suppression Motion – Kern – 12

1998) ("a stolen vehicle report alone furnishes sufficient basis to arrest the driver") (citation omitted).  So long as the officer "has reliable information, such as a police report, indicating that the vehicle has been stolen, he thus has probable cause to believe that the driver has committed the crime of either stealing the car or knowingly operating a stolen vehicle." *Id.*  This is true "even if the report is later discovered to be erroneous", which here, it was not.  *See id.*

Thus, the relevant "'time reasonably required to complete the mission'" under *Rodriguez*, 575 U.S. at 350–51 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407) (2005) (alteration omitted) was not the time it took to issue a ticket "justified only by a police-observed traffic violation," *id.*, as in *Rodriguez* and *Evans*, but the time it took to confirm that the Hyundai was stolen.  The total duration between Defendant being detained and WWPD dispatch confirming that the Hyundai was stolen was less than 10 minutes.  *See* Govt. Exh. 1, *WWPD Call for Service Detail Report* (Defendant detained at 3:04:53 a.m., vehicle confirmed stolen, with permission to search, at 3:14:47 a.m.).  Defendant can point to no case involving the confirmation of a stolen vehicle report in which a period of time so short was deemed unreasonable.  Based on everything that took place in those ten minutes – stop and arrest, search incident to arrest revealing a torch lighter, and conversation about Defendant's purported purchase – a brief delay to confirm that the Hyundai was indeed stolen, was eminently reasonable based on the facts the officers faced.

Defendant also asserts without citation that Sgt. Bayne needed probable cause to run the Hyundai's registration through his computer.  ECF No. 53 at 7.  But it is inconceivable that the Hyundai was "seized" or "searched" within the meaning of the Fourth Amendment simply because the officer checked the registration *in the computer in his own vehicle* before he stopped the Hyundai.  To the contrary, even *after* a traffic stop, police have a "right to inspect the vehicle for the limited purpose of ascertaining the vehicle registration." *United States v. Brown*, 470 F.2d 1120, 1122 (9th Cir. 1972) ("Brown contends that the failure of

United States' Opposition to *Franks*/Suppression Motion – Kern – 13

the police officers to obtain a search warrant prior to their attempt to check the vehicle registration was violative of his Fourth Amendment rights.  We disagree.").

Likewise, Defendant cites no authority for his argument that the purpose of stopping a vehicle that has been reported stolen must be limited to determining whether it is in fact stolen and no search can take place thereafter.  ECF No. 53 at 7-8.  To be clear, Sgt. Bayne had probable cause *to seize and search the Hyundai without a warrant* based solely on the stolen vehicle report.  *United States v. Noster*, 590 F.3d 624, 631 (9th Cir. 2009) (officers had probable cause to seize a vehicle where they "reasonably relied on the [stolen vehicle] report to conduct a warrantless search of the truck prior to impounding it") (citation omitted).  Under these circumstances, there is no basis to conclude that, as Defendant asserts, "the February stop was in violation of the law."  ECF No. 53 at 6.

**B.    Each Warrantless Search Was Valid Under An Exception To The Warrant Requirement**

WWPD officers searched Defendant incident to his arrest in both February and July 2022; those searches were valid under the longstanding exception to the warrant requirement that ensures officer safety and the preservation of evidence. *Birchfield v. North Dakota*, 579 U.S. 438, 458 (2016) ("The search-incident-to-arrest doctrine has an ancient pedigree. Well before the Nation's founding, it was recognized that officers carrying out a lawful arrest had the authority to make a warrantless search of the arrestee's person.").

Likewise, WWPD's initial warrantless search of the Hyundai was based on the consent of the owner, another longstanding exception to the warrant requirement.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) ("[A] search conducted pursuant to a valid consent is constitutionally permissible.").

It was also permissible for officers to look into the windows of the Hyundai and the Mustang to see what was in plain view, without first obtaining warrants. Although they did not do so, they could even have *seized* items in plain view that

United States' Opposition to *Franks*/Suppression Motion – Kern – 14

1    were clearly contraband (like the drug pipes).  "The plain view doctrine allows the

2    warrantless seizure of property in plain view when the officer is lawfully on the

3    premises, the incriminating character of the evidence is 'immediately apparent,'

4    and the officer 'has a lawful right of access to the object itself.'"  *Weaver v.*

5    *Multonam Cty.*, 142 F.3d 447, at *6 (9th Cir. 1998) (unpublished) (citing *Horton v.*

6    *California*, 496 U.S. 128, 136-42 (1990)).

7        Finally, WWPD did not need to obtain warrants prior to either of the K-9

8    dog sniffs.  A dog's sniff of a vehicle's exterior is not a search under the Fourth

9    Amendment.  *Caballes*, 543 U.S. at 409 ("the dog sniff was performed on the

10   exterior of respondent's car while he was lawfully seized for a traffic violation.

11   Any intrusion on respondent's privacy expectations does not rise to the level of a

12   constitutionally cognizable infringement.").

13       **C.    Defendant Had No Expectation of Privacy In the Stolen Hyundai**

14       To the extent that Defendant is attempting to suppress evidence obtained

15   from the Hyundai, and then all other evidence as fruit of the poisonous tree, ECF

16   No. 53 at 14, the United States submits that he never had a reasonable expectation

17   of privacy in the Hyundai in the first place because it was stolen.  *Byrd v. United*

18   *States*, --- U.S. ---, 200 L. Ed. 2d 805, 138 S. Ct. 1518, 1529 (2018) ("'a person

19   present in a stolen automobile at the time of the search may [not] object to the

20   lawfulness of the search of the automobile'") (quoting *Rakas v. Illinois*, 439 U.S.

21   128, 141 (1978) (describing as "inexplicable" lower court rulings concluding that

22   "a person present in a stolen automobile at the time of a search may object to the

23   lawfulness of the search of the automobile"); *United States v. Sconiers*, 2023 WL

24   425818, at *4 (E.D. Cal. Jan. 26, 2023) ("one cannot have a reasonable expectation

25   of privacy in a stolen vehicle").  Defendant had no reasonable expectation of

26   privacy in the Hyundai and lacks standing to suppress any evidence recovered

27   from it, or any purportedly poisonous fruit derived therefrom.

28

### D.     Inventory Searches Made the Discovery of Evidence Inevitable

Likewise, to the extent that Defendant is attempting to suppress evidence obtained in what he claims were warrantless searches of the Hyundai or Mustang, or their poisonous fruit, ECF No. 53 at 14, inevitable discovery renders the argument meritless.  The inevitable discovery doctrine, embraced by the Supreme Court in *Nix v. Williams*, 467 U.S. 431 (1984), allows introduction of illegally obtained evidence "if the government can show by a preponderance of the evidence that the tainted evidence would inevitably have been discovered through lawful means." *Ramirez-Sandoval*, 872 F.2d at 1396 (citing *Nix,* 467 U.S. at 444). The doctrine requires that "the fact or likelihood that makes the discovery inevitable arise from circumstances other than those disclosed by the illegal search itself." *United States v. Boatwright*, 822 F.2d 862, 864–65 (9th Cir. 1987).

Here, everything in both cars would inevitably have been recovered lawfully because the Hyundai and Mustang were each subject to inventory searches as part of WWPD's towing policy.  *See* Gov't. Exh. 2, WWPD Policy Manual, *Vehicle Towing and Release*.  It is "undisputed that once a vehicle has been impounded, the police may conduct an inventory search." *United States v. Wanless,* 882 F.2d 1459, 1463 (9th Cir. 1989); *see also Colorado v. Bertine,* 479 U.S. 367, 368–69, 372–73 (1987) (officer's search of closed backpack in the car, initiated after arrest, but before the tow truck arrived, was a proper inventory search); *United States v. Johnson*, 889 F.3d 1120, 1123 (9th Cir. 2018) ("Prior to the tow, the officers conducted an inventory search of the car, again pursuant to local policy."); *State v. Williams*, 102 Wash. 2d 733, 742–43 (1984) ("A motor vehicle may be lawfully impounded in certain specific circumstances: (1) as evidence of a crime, if the officer has probable cause to believe that it was stolen or used in the commission of a felony; (2) as part of the police 'community caretaking function,' if the removal of the vehicle is necessary (in that it is abandoned, or impedes traffic, or poses a threat to public safety and convenience, or is itself threatened by vandalism

or theft of its contents), and neither the defendant nor his spouse or friends are available to move the vehicle . . . .") (quotation and citation omitted).

Although the locked containers in each car would not have been searched as part of the *inventory* tow searches, pursuant to WWPD policy, everything else that would have been recovered as part of the inventory searches would have led to the same search warrants issued here, and all of the same admissible evidence would have been discovered inevitably.

### E.    Each Search Warrant Was Supported By Probable Cause

Defendant's main complaint appears to be that the warrants themselves were somehow lacking, but even a cursory review of the four corners of each warrant demonstrates that each was amply supported by probable cause.  In reviewing the validity of a search warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit.  *See generally United States v. Taylor*, 716 F.2d 701 (9th Cir. 1983).  Probable cause determinations are to be made by viewing the "totality of the circumstances" set forth in the affidavit. *Gates*, 462 U.S. at 230; *see also United States v. Mayer*, 560 F.3d 948, 956 (9th Cir. 2009) (reasonableness is determined by an examination of "the 'totality of the circumstances' in a 'common-sense' manner.").

A reviewing court may not reverse such a conclusion unless the magistrate's decision is clearly erroneous. *United States v. Estrada*, 733 F.2d 683, 684 (9th Cir. 1984) (citing *United States v. Seybold*, 726 F.2d 502, 503 (9th Cir. 1984)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed."  *Gates*, 462 U.S. at 238.

Affiants are only required to show a fair probability that contraband will be found.  "A search warrant … is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place." *United States v. Adjani*, 452 F.3d 1140, 1145 (9th Cir.), *cert. denied sub nom*, *Reinhold v. United States*, 549 U.S. 1025 (2006) (quoting *Steagald v. United States*, 451 U.S. 204, 213

(1981)). "Probable cause exists if it would be *reasonable* to seek the evidence in the place indicated in the affidavit." *Adjani*, 452 F.3d at 1145 (quoting *United States v. Wong*, 334 F.3d 831, 836 (9th Cir. 2003) (internal quotations omitted) (emphasis added)); *United States v. Crews*, 502 F.3d 1130, 1136-37 (9th Cir. 2007) ("an affidavit must establish a reasonable nexus between the crime or evidence and the location to be searched.  It need only be reasonable to seek the evidence at the location indicated in the affidavit.") (internal citations omitted).

The Supreme Court has reminded and re-affirmed:

> On many occasions, we have reiterated that the probable cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause is a fluid concept— turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.

*Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003) (internal citations and quotations omitted); *see also Florida v. Harris*, 568 U.S. 237, 244 (2013) (probable cause is meant to be an "all-things-considered approach") (quotations omitted). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.  A magistrate or judge "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Angulo–Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986).

Reviewing courts are not "in a position to flyspeck the affidavit through de novo review."  *Gourde*, 440 F.3d at 1069.  Rather, the issuing judge's determination "should be paid great deference."  *Spinelli v. United States*, 393 U.S.

United States' Opposition to *Franks*/Suppression Motion – Kern – 18

410, 419 (1969).  "This deferential approach is the antithesis of a 'grudging or negative attitude' toward search warrants and 'a hypertechnical rather than a commonsense' analysis." *Gourde*, 440 F.3d at 1069 (quoting *Ventresca*, 380 U.S. at 108–09).  Disagreement with the magistrate judge does not justify exclusion of evidence, because the "exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges." *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984).

### 1.    Probable Cause Supported the February Warrants

It appears to be undisputed that WWPD officers conducted a consent search of the Hyundai, and saw backpacks and bags, a nail gun, and a safe in the trunk. ECF No. 53-2 at 7.  As Det. Watson submitted in the affidavit for the initial warrant, WWPD had confirmed with the owner of the Hyundai that it had been stolen by Scorpio Rodriguez, and stolen vehicles are often used as collateral in drug negotiations.  *Id.* at 8-9.  Det. Watson also informed the issuing judge that he knew Defendant to have prior convictions for burglary, drugs, and guns, that he was currently dealing drugs, and that stolen property is often used in lieu of money to satisfy drug debts.  *Id.*  He also informed the judge that the K-9 had failed to alert to the Hyundai.  *Id.* at 9.  He confirmed that there was a nail gun inside the Hyundai, and that recently a number of construction site robberies had taken place in that area, overnight, during dark hours.  *Id.*  He asserted based on his training and experience that he believed documents related to ownership of the stolen car, along with evidence of stolen property, would be in the car, including in the backpacks and other items in plain view.  *Id.*  He sought specific authority to search inside locked compartments, the safe, and the bags.  *Id.*  But despite knowing a significant amount about Defendant's drug history and conduct, he *still* limited the scope of the search to evidence related to the stolen car and stolen property—not drug crimes.  *Id.*

Contrary to Defendant's position that "there is nothing that links the nail gun to being stolen or a theft,"  ECF No. 53 at 9, Det. Watson specifically identified recent robberies from construction sites, in that area, that had taken place at the same time of day (overnight, during darkness), his knowledge that stolen property was often used as drug collateral, and his knowledge that Defendant was dealing drugs and had prior drug convictions.  *Id.*  Likewise, it was in no way unreasonable for both officers to assert that stolen cars and property are often used as collateral in the drug world.  *Id.* at 8-9.  In particular, common sense and the extensive training and experience that Det. Watson set forth in the affidavit, *id.* at 5-6, made it reasonable for him to assert that whoever was using the car since it had been stolen two weeks earlier might have left receipts, identification documents, or other documents in the car, along with evidence related to who bought and/or sold it. Defendant's own assertion that he had purchased the Hyundai from Scorpio Rodriguez made it even more likely that Det. Watson might find records of the purported sale within the car.  Defendant alleges that all of this is speculation and lacks particularity, but it is difficult to see what more Det. Watson needed to say in the affidavit to establish probable cause to search the Hyundai for evidence that (1) the car itself had been stolen, and/or (2)  that the nail gun had recently been taken from a construction site in the area.  The articulated probable cause was sufficient for Judge Hedine to issue the initial warrant, and Defendant has identified no reason for this Court to reverse that decision.

Once the officers started executing the search warrant for the evidence of stolen vehicle and/or property, they located a number of items consistent with robbery of a construction site, including a portable vacuum and tool set.  ECF No. 53-2 at 23.  They also saw, but did not seize or search, drug and gun evidence: a .22 caliber pump action rifle, and in the safe, a pistol and a clear white case that appeared to contain a digital scale, with white residue on the inside.  *Id.*

WWPD officers stopped searching, and Det. Watson submitted an amended warrant application to Judge Hedine for the drug and gun evidence.  *Id.*  In the amended application, he sought to expand the scope of the search to include the gun and drug evidence that had been located during the initial search, but was outside its scope.  *Id.* at 23-25.  His amended application included all of the information from his initial application, including his (and Sgt. Bayne's) knowledge of Defendant's drug dealing and convictions, along with the new gun and drug evidence they had located during the execution of the initial search.  *Id.* He also included information based on his training and experience that the digital scale appeared to be of the kind used to weigh controlled substances such as methamphetamine, and that the white powder on the case enclosing the scale appeared to be a controlled substance such as methamphetamine.  *Id.* at 23-24.

Nevertheless, Defendant alleges that this warrant was insufficient because "he does not state why he believes there would be drugs in the vehicle."  ECF No. 53 at 12.  That would be true *only* if the Court ignored the knowledge of two officers that Defendant had a history of dealing drugs, and the affiant's myriad statements about his training and experience in drug cases, knowledge of Defendant's drug convictions, knowledge that Defendant was currently dealing drugs, knowledge about the scale, and ability to identify the white powder on the case as consistent with methamphetamine.  Again, it is difficult to see what more the affidavit needed to establish probable cause to search for drugs and guns.  By the time Det. Watson amended the warrant to add drug and gun evidence for the first time, it was no longer true that he was "investigating possession of a stolen vehicle, not investigation of drug trafficking," as Defendant alleges.  *Id.*

Defendant also argues that Det. Watson failed to give specific dates and locations for the construction site burglaries, ECF No. 53 at 12, which is nothing more than "interpreting the affidavit in a hypertechnical, rather than a commonsense, manner," as forbidden by *Ventresca*, 380 U.S. at 108-09.  To the

contrary, he articulated that he knew that there had "been *recent* construction site burglaries *in the area* in which various tools and equipment ha[d] been stolen." ECF No. 53-2 at 9 (emphases supplied). That is all that was necessary. *Ventresca*, 380 U.S. at 108-09 (affidavits "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion" because they are "normally drafted by nonlawyers in the midst and haste of a criminal investigation" such that elaborate specificity has "no proper place in this area").

## 2.     Probable Cause Supported the July Warrants

Similarly, the warrants in July were amply supported by probable cause. The affiant, Ofc. Klicker, informed Judge Hedine in the initial warrant affidavit (and request for dog-sniff authority) that: Defendant had an active confirmed felony warrant[2]; that he was in possession of a pipe consistent with smoking methamphetamine; that marijuana pipes and bagged marijuana were in plain view[3] inside the Mustang; and that there was a lock box in the back seat that was similar to one that Defendant had previously been arrested with, which had contained methamphetamine and a firearm. ECF No. 53-2 at 34. Surely this was enough information for a neutral and detached magistrate to consider in a commonsense way before issuing a search warrant for drug evidence inside the Mustang. *See, e.g.*, *United States v. Stuckey*, No. 2:22-CR-00153-DJC, 2023 WL 3931832, at *4

---

[2] Defendant's exhibits inadvertently omit page 2 of Ofc. Klicker's declaration for the initial warrant, which indicates his knowledge that Defendant "had an unconfirmed felony warrant out of Walla Walla Superior Court", and his request that dispatch confirm the warrant. These statements do appear in the amended warrant affidavit. ECF No. 53-2 at 40. *See* Gov't. Exh. 3 (the missing page).

[3] Defendant asserts that the affidavit is insufficient in part because Ofc. Klicker did not identify "how he observed these items without entering the vehicle." ECF No. 53 at 10. The answer is plain view, which Ofc. Klicker made clear in the affidavit without using the magic words "plain view": he saw the drug evidence when he "went up to the vehicle to examine it. Inside the vehicle I observed a backpack on the front passenger seat of the vehicle. . . ." ECF No. 53-2 at 34.

United States' Opposition to *Franks*/Suppression Motion – Kern – 22

(E.D. Cal. June 9, 2023) ("Collectively, the considerable amount of cannabis plus baggies and scales in plain view gave the officers probable cause to search the vehicle for further contraband or evidence of drug trafficking."); *United States v. Collins,* 827 F. App'x 721, 722–23 (9th Cir. 2020) (unpublished) (affirming probable cause to search vehicle where officers observed in plain view cannabis and a digital scale in an area with high amounts of drug trafficking).

As in February, when WWPD officers were executing the initial warrant, they located firearms, which they left in place while seeking an amended warrant for both drug *and* gun evidence.  ECF No. 53-2 at 41-42.  Again, the affiant included the new information, which was that the K-9 had alerted to the presence of drugs in the Mustang, and that while searching for drugs, they had located firearms – which they had not seized because firearm evidence was not within the scope of the initial affidavit.  *Id.*  The affiant then confirmed in the affidavit that Defendant could not legally possess firearms, and sought an amended warrant for both gun and drug evidence.  *Id.*  Defendant has failed to identify how any of these statements were materially false or insufficient.

Instead, Defendant has made what appears to be a particularity/materiality challenge to two omissions from the July warrant submissions: (1) that Ofc. Klicker did not inform that judge that the person who owned the property on which the Mustang was parked had denied consent for the K-9 sniff; and (2) the "officers did not identify what the arrest warrant was for."  ECF No. 53 at 12.  Defendant cites zero cases in which either of these facts, or anything similar, was found to be material to the issuance of a warrant under similar circumstances.  To the contrary, it is difficult to see how either omission was material.

The test for materiality of an omission is simple: add in the missing statement, and see if probable cause still exists.  *Kaley*, 571 U.S. at 338 ("the key inquiry is whether probable cause remains once the evidence presented to the magistrate judge is supplemented with the challenged omissions") (quotation,

United States' Opposition to *Franks*/Suppression Motion – Kern – 23

alteration and citation omitted).  "If probable cause remains, the defendant has failed to establish a material omission."  *Norris*, 942 F.3d at 910 (citation omitted). Here, probable cause clearly remains if the omissions are added back in.

First, Defendant has not articulated any way in which it would be true that if Judge Hedine had known that the property owner denied consent for the dog sniff, he would have rejected the warrant.  That cannot be the case; each piece of information that established probable cause was still in the affidavit and carried the same weight, regardless of Defendant's friend's denial of consent.  This warrant would have issued all the same.  Moreover, as set forth above, a K-9 dog sniff is not a search within the meaning of the Fourth Amendment.  Defendant has not established it would have affected the judge's determination of probable cause to learn that a third party property-owner had not given consent to an investigative technique that does not, itself, require probable cause.

Second, Defendant has identified no case in which the failure of the affiant to identify the specific crime for which a felony warrant is outstanding has been held to be a material omission under similar circumstances.  It is easy to see why: whether the affiant told the judge that the warrant was for Defendant's February drug and gun misconduct, or some other felony, it would not have changed the material fact *that he had a confirmed outstanding felony warrant*.  If the argument is that it could have been a warrant for jaywalking or some other minor infraction, such that Judge Hedine would have rejected the warrant, it fails: no matter what the specific crime was, Judge Hedine knew that Defendant had a *felony* warrant that had been confirmed.  As with the K-9 consent above, adding back in the specific felony offense would have done nothing to affect the judge's finding of probable cause.  In short, Defendant has identified not one knowing or reckless false statement or material omission in any of the warrant affidavits in this case.  His motion should be denied without a *Franks* hearing.

### F.    Warrants Authorized Searching In Containers Inside The Cars

Defendant makes a halfhearted attempt to assert that it was improper for WWPD to search inside locked containers inside the Hyundai and Mustang.  ECF No. 53 at13-14.  But Defendant's assertion is based on a false premise: that WWPD searched inside any of these containers *without a warrant*.  *See* ECF No. 53 at 14.  That is simply untrue.  The record here is clear: WWPD did not search any closed or locked container inside the Hyundai or Mustang until *after* obtaining search warrants for each entire vehicle.  *See* ECF No. 53-2 at 7-8 (backpack and safe in Hyundai) ("None of the closed or locked items were opened by me or any present law enforcement" prior to warrant issuing); *id.* at 42 (backpack in Mustang) ("*During our lawful search of the Ford Mustang and while searching for evidence of the original listed [drug] offense* . . . Det. S. Thompson located a black semi-automatic pistol, in a black nylon holster.  This firearm was inside a black and gray backpack, which was on the front passenger seat.") (emphasis supplied); *id.* at 42 (silver lock box in Mustang) ("Det. S. Thompson continued her search *under the authority of the original search warrant* for narcotics related evidence.  In a silver case, which was in the back seat area of the Ford Mustang, Det. S. Thompson discovered a second black semi-automatic firearm along with a bag of bullets.") (emphasis supplied).

It is also black letter law that the "police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."  *California v. Acevedo*, 500 U.S. 565, 580 (1991) (articulating automobile exception to warrant requirement).  Here, even though the automobile exception likely would have applied if the officers had simply executed warrantless searches of the vehicles, an actual determination of  probable cause was in fact made by the independent and neutral magistrate who issued the warrants.  Under these circumstances, there can be no doubt that the searches were valid.  "A container that may conceal the object of a search authorized by a warrant

may be opened immediately; the individual's interest in privacy must give way to the magistrate's official determination of probable cause." *United States v. Ross*, 456 U.S. 798, 823 (1982) (probable cause that vehicle contained contraband justified search of closed brown paper bag in trunk). It is of no moment that any of the containers within the vehicles were themselves locked or closed, once the warrants issued. *See United States v. Cortez-Rocha*, 394 F.3d 1115, 1117 (9th Cir. 2005) (quoting *Ross,* 456 U.S. at 821) ("[W]hen a legitimate search is underway, and when its purpose and its limits have been precisely defined, nice distinctions between . . . glove compartments, upholstered seats, trunks, and wrapped packages, in the case of an automobile, must give way to the interest in the prompt and efficient completion of the task at hand.")

### G.    The Officers Executing The Warrants Acted in Good Faith

Even if the Court were to find the affidavits lacking, no evidence should be suppressed because the executing officers relied in good faith on Judge Hedine's repeated findings of probable cause. It is firmly established that "suppression of the evidence found in a search pursuant to that warrant is not justified if the officer's reliance on the [judge's] determination of probable cause was objectively reasonable." *United States v. Needham*, 718 F.3d 1190, 1194 (9th Cir. 2013) (quoting *United States v. Leon*, 468 U.S. 897, 926 (1984)). As the Supreme Court noted, "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, deterrence rationale loses much of its force, and exclusion cannot pay its way." *Davis v. United States*, 564 U.S. 229, 238 (2011) (quotations and citations omitted); *see also Crews*, 502 F.3d at 1136 (reviewing court has discretion to skip directly to consideration of good faith) (citations omitted).

Here, each warrant was executed in good faith reliance on a finding of probable cause by Judge Hedine. There is no indication that the judge abandoned his neutral arbiter role in reaching his conclusions. Defendant asserts generally

that the warrants lacked sufficient probable cause, but as set forth above, each warrant contained sufficient facts for a reasonably prudent magistrate to find probable cause.  Thus, assuming *arguendo* that this Court were to find any warrant lacking in probable cause, suppression is still inappropriate because the executing officers reasonably relied on the warrants and the good faith exception applies.

The good faith "inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n. 23.  Even if the Court were to find any warrant facially invalid it "must also review the text of the warrant and the circumstances of the search to ascertain whether the agents might have reasonably presumed it to be valid." *Id.* at 923.  Det. Watson and Ofcs. Klicker and Reyna each specifically identified numerous bases to establish probable cause for the initial and amended warrants, officers stopped searching whenever they found something that exceeded the scope, and there is no substantiated allegation here that any information in any warrants was inaccurate or misleading.  It was reasonable for the officers to presume the validity of the warrants.

## V.    Conclusion

The United States submits that Defendant's motion should be denied without a *Franks* hearing, and there is no need for any officer to take the stand. Nevertheless, the United States anticipates that (now) Captain Baynes, Detective Watson, Officer Klicker, and Officer Reyna will be present at the hearing in case the Court has any factual questions.

Dated: July 13, 2023

Vanessa R. Waldref
United States Attorney

*s/ David M. Herzog*
David M. Herzog
Brandon L. Pang
Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to Defendant's counsel of record using the CM/ECF system.

*s/ David M. Herzog*
David M. Herzog
Assistant United States Attorney

Certificate of Service – 1