Stephanie Van Marter
Acting United States Attorney
Eastern District of Washington
David M. Herzog
Assistant United States Attorney
Jessica E. Vye
Law Clerk
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>REX MICHAEL KERN,<br><br>                    Defendant. | Case No.: 4:22-CR-06038-MKD<br><br>United States' Response and Opposition to Defendant's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 |

        Plaintiff United States of America, by and through Stephanie Van Marter, Acting United States Attorney for the Eastern District of Washington, David M. Herzog, Assistant United States Attorney for the Eastern District of Washington, and Jessica E. Vye, Law Clerk, hereby opposes Defendant Rex Michael Kern ("Defendant")'s Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.

        On May 20, 2025, Defendant filed a timely pro se 28 U.S.C. § 2255 motion, alleging ineffective assistance of counsel ("IAC").  ECF No. 125, 126.  On June 9, 2025, the Court ordered the United States to respond to Defendant's motion.  ECF No. 127.  Defendant does not appear to have filed prior habeas corpus motions, and no prior evidentiary hearings have been held on any such motions.

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 1

# I.    PROCEDURAL HISTORY

In 2022 and 2023, federal grand juries returned a variety of drug and gun charges against Defendant.  ECF No. 1; ECF No. 36; ECF No. 59.  In May and June of 2023, the United States offered Defendant draft plea agreements in which the United States and Defendant would each be required to recommend a sentence of 144 months.  *See* Exhibits 1, 2.  Defendant rejected those arguments and instead filed suppression motions related to the searches of vehicles in February and July of 2022.  ECF No. 53.  At the suppression hearing, the Court denied some suppression arguments and set a further evidentiary hearing on others.  ECF No. 89.

On February 22, 2024, before any further evidentiary hearings, Defendant pled guilty pursuant to a plea agreement to gun and drug charges in Counts 1, 2, 4, and 6 of the Second Superseding Indictment.  ECF No. 104.  All remaining counts of the Second Superseding Indictment were dismissed.  *Id.* at 10; ECF No. 121 at 1.  Defendant agreed to waive his right to appeal his conviction and sentence.  ECF No. 104 at 17.  Defendant waived his right to bring an IAC claim unless it was based on information Defendant did not know or could not have known through the exercise of due diligence by the time the Court imposed sentence.  *Id.*

On May 30, 2024, the Court sentenced Defendant to concurrent terms of 198 months and five years of Supervised Release.  ECF No. 121 at 2–3.

On May 20, 2025, Defendant filed his § 2255 motion, claiming that his prior lawyer, Mr. Nick Marchi, provided IAC.  ECF No. 125, 126.  On June 9, 2025, the Court ordered the United States to respond.  ECF No. 127.

# II.    DEFENDANT'S PETITION APPEARS TO BE TIMELY

A defendant must file a § 2255 petition within one year after his or her conviction becomes final.  28 U.S.C. § 2255(f)(1).  Defendant mailed his petition on May 10, 2025, prior to the relevant one-year deadline.  *See* ECF No. 125-3. Defendant is projected to be released from BOP on October 15, 2036.  *See* BOP Inmate Locator at https://www.bop.gov/inmateloc/ (last accessed on July 7, 2025).

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 2

### III.    LEGAL STANDARDS FOR 28 U.S.C. § 2255 PETITIONS

To obtain relief under § 2255, Defendant must demonstrate that his conviction or punishment violates the Constitution or laws of the United States. *Davis v. United States*, 417 U.S. 333, 345 (1974).

"The range of claims which may be raised in a § 2255 motion is narrow." *United States v. Wilcox*, 640 F.2d 970, 972 (9th Cir. 1981) ("The statute enumerates a limited number of claims which are cognizable: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence imposed in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack."). Nevertheless, an IAC claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

This Court reviews a § 2255 "motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack[.]" *Rules Governing Section 2255 Proceedings for U.S. District Courts*, Rule 4(b).  A district court must summarily dismiss a § 2255 application "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." *Id*.

The Supreme Court's two-prong test to determine whether Defendant received constitutionally ineffective assistance of counsel is well-known and long-established. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).

First, Defendant must demonstrate that he received constitutionally deficient assistance of counsel.  He can do so only by showing that the advice he received was not within the range of competence demanded of attorneys in criminal cases, and that counsel did not comply with the Sixth Amendment (which does not specify the requirements of counsel, only the general right to counsel).  *Id*. Deficient performance, under the first prong of *Strickland*, means conduct that falls

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 3

below professional standards.  *Id*.  However, courts "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 689.

Second, Defendant must also show that he was actually prejudiced by counsel's deficient performance.  *Id*. at 687.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Id*. at 691.  It is not enough for Defendant to show that an error had *some* conceivable effect on the proceeding's outcome.  *Id*. at 693.  Rather, he must show that there is a reasonable probability sufficient to undermine confidence in the outcome.  *Id*. at 669, 694. "Actual prejudice" has not been given a one-size-fits-all definition but has instead been addressed on a claim-by-claim basis.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993) (adopting the test under *Kotteakos v. United States*, 328 U.S. 750 (1946), that the error "had substantial and injurious effect or influence in determining the jury's verdict").  Actual prejudice means more than the mere possibility of prejudice: it requires petitioner to "shoulder the burden of showing" that the alleged error "worked to [defendant's] actual and substantial disadvantage."  *United States v. Frady*, 456 U.S. 152, 170–71 (1982) (no prejudice shown where prisoner claimed jury instructions unconstitutionally presumed malice because evidence of malice was overwhelming).

Accordingly, Defendant bears the burden of showing that Mr. Marchi's representation was constitutionally deficient and unreasonable under prevailing professional norms, that the challenged actions were not sound strategy, and that Defendant was actually prejudiced.  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).  The *Strickland* standard is "highly demanding," and requires consideration of counsel's "overall performance throughout the case."  *Id*. at 382, 386. Defendant's burden is substantial: it is even greater than that required to establish plain error on direct appeal.  *See Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 4

## IV.    ARGUMENT

### A.    The United States May File A Pre-Answer Motion To Dismiss In Response To A Motion Filed Under 28 U.S.C. § 2255.

Motions brought under 28 U.S.C. § 2255 are governed by the Federal Rules of Civil Procedure and the Rules Governing Section 2255 Proceedings. *See* Fed. R. Civ. P. 81(a)(4); R. Gov'g § 2255 Proc.

Rule 4(b) of the habeas corpus rules provides that if the Court does not dismiss the Section 2255 motion after its initial review, it must order the United States to file "an answer, motion, or other response."  R. Gov'g § 2255 Proc., Rule 4(b).  The commentary to Rule 4(b) clarifies that the United States' initial response may be a motion to dismiss rather than an answer.  *See* R. Gov'g § 2255 Proc., Rule 4(b), 2004 Amends. cmt. ("The amended rule reflects that the response to a Section 2255 motion may be a motion to dismiss or some other response.").

If this Court denies the United States' Motion to Dismiss, the United States requests that this Court extend the time for filing a substantive answer for 60 days so the United States may seek to pierce the attorney client privilege and obtain a declaration from defense counsel.

### B.    Defendant Has Waived His Ability To Bring This § 2255 Motion Because He Was On Actual Notice Of The Purported Bases For His IAC Claim Well Before Sentencing

Courts typically "'enforce the plain language of a plea agreement if it is clear and unambiguous on its face.'"  *United States v. Speelman*, 431 F.3d 1226, 1229 (9th Cir. 2005) (quoting *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005)).  This includes waivers of the rights to appeal and bring collateral attacks, so long as "'(1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made.'"  *Davies v. Benov*, 856 F.3d 1243, 1246 (9th Cir. 2017) (quoting *Jeronimo*, 398 F.3d at 1153); *see also United States v. Watson*, 582 F.3d 974, 986 (9th Cir. 2009); *United States v. Rodriguez*, 49 F.4th 1205, 1211–12 (9th Cir. 2022).

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 5

Here, the collateral-attack provision of Defendant's plea agreement is clear and should be enforced. He expressly waived his right to bring any § 2255 motion other than a claim of IAC that was both unknown to him and unknowable to him in the exercise of due diligence by the time of sentencing:

> Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

ECF No. 104 at 17.

In addition to those terms, the Court conducted a thorough colloquy at the change of plea hearing, satisfying Fed. R. Crim. P. 11(b), and summarizing the essential terms of Defendant's agreement, his waivers, and his knowledge. ECF No. 103 (change of plea hearing minutes); ECF No. 106 (order accepting guilty plea); ECF No. 129 (transcript of change of plea hearing). Defendant confirmed that he had been provided a copy of the plea agreement, had read and understood it, and had a fulsome opportunity to speak with his counsel about it. *Id.* at 9.

Consistent with the plea agreement that Defendant acknowledged he had read and understood, the Court specifically advised him that he would be giving up certain rights to challenge his conviction and sentence, including his waiver of known and knowable bases for a habeas corpus petition:

> THE COURT: This document also indicates that you're waiving your right to file any post-conviction motion attacking your conviction and sentence, including a 2255, or habeas petition, unless it is based on ineffective assistance of counsel, based on facts of which you are unaware at this time.
>> Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.

ECF No. 129 at 20.

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 6

1    The Court found Defendant to be competent and that he knowingly and

2    voluntarily entered into the plea agreement and guilty plea. *Id.* at 25.

3        Defendant does not argue that he entered his plea unknowingly or

4    involuntarily. Instead, he claims that he would have entered an earlier plea to 144

5    months, but for the constitutionally deficient and prejudicial advice of Mr. Marchi.[1]

6    ECF No. 126 at 2. But Defendant waived this claim in his Plea Agreement,

7    because *whatever* level of representation Mr. Marchi provided, Defendant had

8    actual knowledge of that performance well before sentencing. Defendant

9    acknowledges as much in his motion:

> Mr. Marchi had received an initial offer of resolution of the matter
> from the government, in exchange for his plea of guilt for 12 years.
> Without conferring with Petitioner, Attorney Marchi did reject this
> offer on his own, and later revealed the terms of the agreement to
> Petitioner while advising, not to worry that, he was going to make for
> a suppression of the evidence, and would ultimately secure a 5 year
> sentence upon procession.
>
> Thereafter, the government again offered the resolution of a 12 year
> sentence if Petitioner would not move for suppression of the evidence
> in the case against him. Attorney Marchi affirmatively advised
> Petitioner, to reject the plea for the fact that, he was to have the
> evidence suppressed due to several violations of the Fourth

---

[1] Defendant asserts that "Mr. Marchi had received an initial offer of resolution of the matter from the government, in exchange for his plea of guilt for 12 years" and "[t]hereafter, the government again offered the resolution of a 12 year sentence if Petitioner would not move for suppression of the evidence in the case against him." ECF No. 126 at 2. To be clear, the challenged plea offers were not made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) or any other provision that would have limited the discretion of the Court to impose any sentence at or above the mandatory minimum. *See* Exhibits 1, 2 (the plea agreements Defendant rejected). Those plea offers included joint commitments by the United States and Defendant to *recommend* 144 months; the Court retained exclusive authority to determine and impose any legal sentence, including a sentence higher than the government's recommendation. *See id.*

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 7

1

2

        Amendment in searching and seizing the evidence leading to
Petitioner's arrests and prosecution.

3

4

        "Based on this advice," Petitioner rejected the government's offer,
respectively.

5

ECF No. 126 at 2.

6

        First, to the extent that Defendant's claim is based on Mr. Marchi allegedly

7

rejecting an initial offer containing a 144-month joint recommendation without

8

presenting it to him, he acknowledges that Mr. Marchi "later revealed the terms of

9

the agreement" while advising him to proceed with suppression. *Id.*; *see* Exh. 1.

10

This case is not one in which defense counsel provided IAC by failing to present a

11

plea agreement; Defendant acknowledges he knew about the first plea agreement

12

containing a 144-month joint recommendation well before sentencing. His waiver

13

should be enforced, because he admits that, prior to sentencing, he knew about this

14

first plea offer and Mr. Marchi's purportedly unauthorized rejection of it.

15

        Second, Defendant admits that Mr. Marchi presented him with a *second*,

16

revised plea agreement containing the same 144-month joint recommendation, and

17

discussed the relative benefits of accepting or rejecting it, given the viable

18

suppression motion in the case. *Id.*; *see* Exh. 2. Thus, more than a year before his

19

IAC waiver was triggered by his sentencing hearing, Defendant was indisputably

20

on notice of Mr. Marchi's purportedly unconstitutionally deficient advice when

21

Mr. Marchi presented him with the choice to proceed with suppression or take the

22

plea offer containing a 144-month joint recommendation. Defendant's IAC waiver

23

should be enforced on that basis as well.

24

        In short, with regard to the threshold inquiry of whether Defendant knew

25

about Mr. Marchi's purportedly deficient performance prior to sentencing – and

26

thus waived this IAC claim under the plain language of his Plea Agreement – the

27

record is clear. He knew, he waived, and when this Court advised him of that

28

waiver, he acknowledged that he was bound by it. *See* ECF No. 129 at 20.

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 8

Mr. Marchi's representation, and all of his material communications with Defendant about plea offers, was terminated on September 18, 2023, and Defendant's sentencing took place on May 30, 2024, eight months later, with a different lawyer. *See* ECF Nos. 79, 120. No matter what Defendant now claims Mr. Marchi told him or failed to tell him, the Court properly advised him at his change of plea hearing of his potential punishment and the fact that he was waiving future IAC claims arising from information he already knew. Even if Defendant is truthfully reporting his conversations with Mr. Marchi, Defendant was on notice of any purportedly bad advice when he entered his plea, much less months later at sentencing. He has failed to identify any material information that he did not know or could not have known at the time of sentencing and has waived this IAC claim.

Defendant's ultimate sentence is higher than he had hoped; his dissatisfaction is understandable. But it is not a basis for habeas relief, given his knowing and voluntary entry of his guilty plea to a plea agreement that included a waiver of known § 2255 claims. He waived in exchange for specific benefits, including the United States' agreement not to pursue other serious charges or a sentencing enhancement pursuant to 21 U.S.C. § 851 that would have significantly increased Defendant's mandatory sentencing exposure. *See* ECF No. 104 at ¶¶ 9, 11. He received the benefit of the bargain and so should the United States, through the enforcement of his knowing and voluntary waiver of his collateral attack rights. *See United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990) (public policy "strongly supports" negotiated plea agreements containing waivers).

## C. Defendant Fails To Demonstrate Constitutionally Ineffective Representation Or Prejudice

If the Court looks past Defendant's waiver, his IAC claim should be denied on the merits, because he has not shown that Mr. Marchi provided constitutionally deficient representation, or that he was prejudiced by that representation. *Strickland*, 466 U.S. at 687–88.

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 9

### 1.    Defendant Has Failed To Demonstrate That Mr. Marchi's Performance Was Constitutionally Deficient

To be sure, "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012).  Although counsel is required to give a defendant the requisite tools to make an intelligent decision, a petitioner cannot prove ineffective assistance of counsel on the basis of a claimed right to "discuss in detail the significance of the plea agreement," and counsel is not obligated to "strongly recommend" that a defendant either accept or reject a plea offer. *Turner v. Calderon,* 281 F.3d 851, 881 (9th Cir. 2002).

Defense counsel is "not constitutionally defective because he lacked a crystal ball." *Id.*  Here, Defendant's own filings make it clear that Mr. Marchi presented at least the second offer that contemplated a joint recommendation of 144 months, discussed that offer with Defendant, and ensured that Defendant was aware of the options to proceed with suppression proceedings instead, if that is what he wanted to do.  ECF No. 126 at 2, 7–9.  Mr. Marchi provided constitutionally effective and strategic representation.

Defendant asserts that Mr. Marchi rejected the first plea offer without meaningfully conferring, by rejecting it and *then* presenting it to Defendant only one day before it expired.  ECF No. 126 at 2, 7.  Defendant also argues that Mr. Marchi advised him to reject the *second* offer containing a joint 144-month recommendation due to "scare tactics," the need to have a suppression hearing, and his confidence that Defendant would get only five years.  *Id.* at 2, 9.  Defendant claims he "did not knowingly and intelligently reject" the two plea offers.  *Id.* at 3.

In his own allegations, Defendant acknowledges that he knew about two plea agreements containing the 144-month joint recommendation and that he was given the opportunity to evaluate at least the second offer against the potential benefits of proceeding with suppression.

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 10

With regard to the first plea offer, Defendant acknowledges that Mr. Marchi presented it to him the day before its deadline expired. ECF No. 126 at 23. The Ninth Circuit has concluded one night is sufficient time for a Defendant to consider a plea offer. *Turner*, 281 F.3d at 880–81 (rejecting IAC claim where Defendant knew of the "terms of the plea offer, thought about it overnight, and decided to turn it down" because he "had the tools he needed to make an informed decision—the critical information and time to think about it"). Defendant also claims that Mr. Marchi had already rejected the first offer before he presented it to Defendant. ECF No. 126 at 23. Taking that assertion is true, Mr. Marchi's purported sin of failing to meaningfully convey the first plea offer before rejecting it was washed away when Mr. Marchi later conveyed the second plea offer containing the same 144-month joint recommendation. There can be no doubt, as Defendant admits, that he had sufficient time to evaluate the second plea offer against the potential risks and rewards of proceeding with suppression. *Id.* ("and thereafter, convincing Petitioner to reject a second and, subsequent 12 year offer with fantastic advice leading any criminal defendant in America to believe that he had a defense to evidence that supported nearly all of the charges and would essentially do away with this evidence as a sanction for violation of right's guaranteed").

Only now, with the benefit of hindsight, does Defendant claim that he would have taken a plea offer containing a 144-month joint recommendation if he had known it was on the table: "Had, I known that the government had offered the initial offer of 12 years, I would have accepted the terms of such in the principle [sic] stages of the criminal action." ECF No. 125-2 at 7. This cannot be true. Defendant knew that a plea offer containing a 144-month joint recommendation was available, but only if he pled guilty prior to the United States spending the resources necessary to prepare for suppression. ECF No. 126 at 2. Once he had that knowledge, Defendant was in the same position defendants are always in: evaluating the benefits a plea offer against the likelihood of success in litigating

motions or going to trial.  Critically, if the suppression proceedings had gone a different way, Defendant's sentencing exposure could have been significantly lower.  *Turner*, 281 F.3d at 880 (finding no IAC where defense counsel advised Defendant to reject a plea because counsel felt that defendant "had a story to tell" and "in fact, had the jury accepted the defense theory . . . it could have acquitted or returned a non-capital conviction").  But he has not shown that it was constitutionally ineffective representation for Mr. Marchi to inform him of plea agreements containing a 144-month joint recommendation and *also* advise him that he had a viable suppression motion.

To the contrary, had Mr. Marchi successfully advised Defendant to take a plea offer containing a 144-month joint recommendation *without* analyzing the potential success of a suppression motion, Defendant would now presumably be before this Court arguing that if only Mr. Marchi had advised him that he could have filed a suppression motion, he would never have pled guilty, would have won suppression, and would be free today.  *See United States v. Jones*, 696 F. App'x 207, 209 (9th Cir. 2017) ("Jones argues that his trial counsel's performance was constitutionally deficient because he failed to move to suppress the search of Jones' cell phone."); *United States v. Sharpe*, 307 F. App'x 46, 47 (9th Cir. 2009) ("Sharpe argues that his trial counsel was constitutionally ineffective for failing to file a motion to suppress evidence that was uncovered by a warrantless search."); *United States v. Willsey*, 105 F. App'x 910, 911 (9th Cir. 2004) ("Willsey complains that his counsel was ineffective in failing to move to suppress confessions given in three interviews, and failing to move to suppress evidence gathered pursuant to search warrants for his vehicle and home. The search warrants were obtained through affidavits relying in part on the first of the three interviews.").

It is for this specific reason that hindsight is not the lens through which IAC is judged:

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 12

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (cleaned up).

Mr. Marchi's conduct must be evaluated "from counsel's perspective at the time, taking care not to view a lawyer's decisions in the distorting effects of hindsight[.]" *United States v. Juliano*, 12 F.4th 937, 940 (9th Cir. 2021) ("Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment.") (quotation and citation omitted).

Mr. Marchi gave Defendant the information he needed to make the choice about whether to take a plea agreement containing a 144-month joint recommendation without seeking suppression or proceeding with suppression and losing the 144-month joint recommendation (he could not do both). As Defendant admits, *he* was the one who decided to plead guilty after Mr. Marchi advised him of the legal options to take the plea or proceed to suppression: "Petitioner rejected the government's offer, respectively." ECF No. 126 at 2.

The decision to plead guilty or proceed with further litigation is only ever a defendant's to make, no matter what his or her counsel advises. *See Henderson v. Morgan*, 426 U.S. 637, 650 (1976) (J. White, concurring) (citing *Boykin v. Alabama*, 395 U.S. 238 (1969)) ("Our cases make absolutely clear that the choice to plead guilty must be the defendant's: it is He who must be informed of the consequences of his plea and what it is that he waives when he pleads[.]"); *North*

1   *Carolina v. Alford*, 400 U.S. 25, 31 (1970) (holding that the standard for the

2   validity of a guilty plea "was and remains whether the plea represents a voluntary

3   and intelligent choice among the alternative courses of action open to the

4   defendant"). Here, Defendant admits that he was the person who made the choice

5   of which he now complains; he has not shown that Mr. Marchi advising him of his

6   options fell outside the wide range of reasonable professional assistance. He has

7   also not provided any information that would overcome the presumption that under

8   these circumstances, Mr. Marchi recommending suppression was not a sound trial

9   strategy. *Bell v. Cone*, 535 U.S. 685, 698 (2002) ("a defendant must overcome the

10  presumption that, under the circumstances, the challenged action might be

11  considered sound trial strategy") (cleaned up) (quotations and citations omitted).

12       Defendant fails to demonstrate that the advice and representation he received

13  fell outside of the range of competence demanded of attorneys in criminal cases

14  and that counsel was not acting as guaranteed by the Sixth Amendment. The

15  failure by defense counsel to "strongly advise Petitioner accept the plea offer did

16  not constitute ineffective assistance." *Martinez v. Holland*, No. 13CV3007-GPC

17  WVG, 2014 WL 6810747, at *6 (S.D. Cal. Dec. 2, 2014). Particularly where, as

18  here, the decision to reject a plea offer and proceed with litigation has significant

19  potential benefits to the Defendant, it is not IAC for counsel to convey a plea and

20  also advise Defendant to proceed with litigation. *Turner*, 281 F.3d at 880 (finding

21  no IAC where counsel advised Defendant to reject a plea and tell his story to the

22  jury, where "in fact, had the jury accepted the defense theory . . . it could have

23  acquitted or returned a non-capital conviction"). Defendant was constitutionally

24  entitled to exactly what he got here: "the tools he needed to make an informed

25  decision—the critical information and time to think about it." *Turner*, 281 F.3d at

26  880–81 (finding no IAC where counsel conveyed a plea but advised Defendant to

27  go to trial, and the record showed that Defendant was "informed of the terms of the

28  plea offer, thought about it overnight, and decided to turn it down").

As the Supreme Court has observed in this context since 1970, "because of inherent uncertainty in guilty-plea advice" and the fact that "uncertainty is inherent in predicting court decisions," determining what *would* have happened if Defendant had made a different decision is "a highly speculative matter in any particular case and not an issue promising a meaningful and productive evidentiary hearing long after entry of the guilty plea." *McMann v. Richardson*, 397 U.S. 759, 771, 774 (1970). Rejecting a plea and proceeding with litigation "entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." *Id.* at 770. Defendant seeks to hold Mr. Marchi to the much higher standard that he could only be constitutionally effective if he correctly predicted the future. That is not the test. Mr. Marchi presented Defendant with the tools he needed to make an intelligent decision – plea offers and advice to proceed with suppression – but was not required to accurately predict the outcome of the suppression motion. *Turner*, 281 F.3d at 880–81 ("Counsel cannot be required to accurately predict what the jury or court might find but he can be required to give the defendant the tools he needs to make an intelligent decision.").

Defendant's ex post facto, self-serving statements do not warrant relief where the record shows that proceeding to suppression was a sound strategy and he thereafter pled guilty knowingly and voluntarily. *See Turner*, 281 F.3d at 881 (without more, self-serving statements are insufficient to establish habeas relief); *Sosnowicz v. Att'y Gen.*, No. 22-16019, 2024 WL 545716, at *2 (9th Cir. Feb. 12, 2024) (finding no IAC where defendant assured the court he understood the plea agreement "perfectly" and disregarding his self-serving statements months later).

Defendant also asserts that if he "had known that Mr. Marchi would break down during the proceeding in the suppression of the evidence motion(s) process," he would have accepted a twelve-year offer. ECF No. 127 at 10. It is true that at the suppression hearing, the Court reminded counsel of his duty of candor:

1
2
3
4
5
6

> My expectations when you make representations here are that they are
> concrete and accurate. And so if you're making an argument, be
> articulate about your argument. If you are saying certain facts do not
> exist, are not in a warrant, be articulate and accurate about that, because
> I want to be able to rely on the representations that come to me. I cannot
> do that if people represent that things are not there when, in fact, they
> are there. So I'm just advising counsel, be more cautious in the way in
> which you present information to the Court.

7    ECF No. 89 at 55–56.

8    But Defendant cites no authority for the proposition that such a reminder –

9    well short of the "open admonishment" that Defendant claims, *see* ECF No. 126 at

10   23 – demonstrates constitutionally deficient performance. To the contrary, Mr.

11   Marchi's strategy was actually *successful* on some of his suppression arguments –

12   a far cry from IAC. To wit, the Court did not grant suppression on all issues.

13   Instead, with regard to the challenge to the second search warrant (from July

14   2022), the Court set a further evidentiary hearing to resolve the "outstanding issue

15   of where were the law enforcement officers when they observed in plain view

16   certain items that were listed in the warrant, and did they have the authority to be

17   in that location." ECF No. 89 at 52–53. Defendant withdrew the suppression

18   motion and pled guilty before that hearing, ECF No. 94, 103, but that fact does not

19   undermine the strategic value that Mr. Marchi provided Defendant.

20   This Court did not accept all of Mr. Marchi's suppression arguments, but

21   that does not establish his constitutional ineffectiveness. Under *Strickland*,

22   "counsel's representation must be only objectively reasonable, not flawless or to

23   the highest degree of skill." *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000)

24   (citing *Strickland*, 466 U.S. at 688–89); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1033

25   (9th Cir. 1997) ("A reasonable tactical choice . . . is immune from attack under

26   *Strickland*."). Tactical decisions "cannot form the basis of a claim for ineffective

27   assistance of counsel" so long as those arguments are reasonable. *Sexton v.*

28   *Cozner*, 679 F.3d 1150, 1160 (9th Cir. 2012) (citing *Strickland*, 466 U.S. at 689).

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 16

Here, Defendant and Mr. Marchi's decision to seek suppression, and the way in which Mr. Marchi did it, were supported by the record as reasonable tactical decisions – as shown by the Court's decision to conduct further evidentiary hearings on plain view issues arising from the July 2022 search.  The fact that Defendant ultimately elected to withdraw the motion and plead guilty does not mean that the tactical decision to pursue suppression was unreasonable.

Defendant's IAC claims are premised on belated assertions of poor plea negotiations and partially unsuccessful suppression arguments, but he has not demonstrated that these claims rise to the level of constitutional violations under the first prong of *Strickland*.  Defendant's own assertions make it clear that he was aware of the offers from the United States, Mr. Marchi advised him reasonably, and he chose to pursue suppression rather than plead.  ECF No. 126 at 2.

To the extent that Defendant argues that Mr. Marchi acted unreasonably by promising that he would win suppression and Defendant would be sentenced to only 60 months rather than the 198 months he actually received, Defendant's argument fails.  ECF No. 126 at 10.  When an attorney makes a prediction to his client about sentencing, the defendant relies on that prediction, and the prediction turns out to be erroneous, it constitutes constitutionally deficient performance only if the erroneous prediction constitutes a "gross mischaracterization of the likely outcome of the case."  *United States v. Michlin,* 34 F.3d 896, 899 (9th Cir.1994) ("'an erroneous prediction by a defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea'") (quoting *United States v. Garcia,* 909 F.2d 1346, 1348 (9th Cir. 1990)); *id.* ("an exception might be made in a case of gross mischaracterization of the likely outcome.").

Here, assuming Mr. Marchi did in fact promise Defendant a 60-month sentence after successful suppression litigation, the delta between Mr. Marchi's erroneous promise of 60 months and Defendant's actual sentence of 198 months is 128 months.  That is not enough to constitute deficient performance.

Even where the delta between the promised sentence and the actual sentence is larger than 60 months, defendants have been unable to show the kind of "gross mischaracterization" that would constitute IAC. *United States v. Jerome*, 124 F.3d 214 (table), at *4 (9th Cir. 1997) (cleaned up) (finding no IAC where defense counsel promised a sentence of no more than 20 years, and defendant was sentenced to 40 years (later reduced to 35)); *see Womack v. Del Papa*, 497 F.3d 998, 1002 (9th Cir. 2007) (rejecting argument that counsel made a gross mischaracterization in advising defendant that an *Alford* plea was his "best chance" at becoming parole-eligible in thirty to forty years, and defendant was sentenced to eight life terms); *Garcia,* 909 F.2d at 1348 (finding that counsel's erroneous prediction that a guilty plea would result in a sentence of no more than 96 months and the actual sentence was 235 months did not warrant withdrawal of plea); *see also Doganiere v. United States,* 914 F.2d 165, 168 (9th Cir. 1990) (finding no IAC where the attorney advised his client that he would receive no more than 12 years if he pled guilty and he received 15 years).

Defendant has failed to meet his burden of establishing constitutionally deficient performance under the first prong of *Strickland*.

### 2. Defendant Has Not Demonstrated That His Counsel's Performance Prejudiced Him

To prove prejudice, Defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Alleged errors do not necessarily need to be "outcome-determinative," *id.* at 697, but "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland*, 466 U.S. at 693). In this context, prejudice is shown "where a plea offer has lapsed or been rejected" because of ineffective assistance of counsel; accordingly, a habeas corpus petitioner "must demonstrate a reasonable probability [he] would have accepted the earlier plea

1   offer had [he] been afforded effective assistance of counsel." *Missouri v. Frye*,

2   566 U.S. 134, 147 (2012).  He "must also demonstrate a reasonable probability the

3   plea would have been entered without the prosecution canceling it or the trial court

4   refusing to accept it, if they had the authority to exercise that discretion[.]" *Id*.  To

5   establish prejudice, "it is necessary to show a reasonable probability that the end

6   result of the criminal process would have been more favorable by reason of a plea

7   to a lesser charge or a sentence of less prison time." *Id*.  This standard is

8   "rigorous" and "highly demanding." *Kimmelman*, 477 U.S. at 381–82.

9        Defendant cannot meet it.  He has failed to show prejudice, whether Mr.

10  Marchi's performance is judged by the difference between his actual sentence of

11  198 months and: (a) 144 months (the rejected pleas) or (b) 60 months (Mr.

12  Marchi's prediction).

13       **a.    Defendant Cannot Show That He Was Prejudiced By The
             54-Month Difference Between The 144-Month Sentence He

14           Believes He Would Have Gotten With Effective
             Representation And The 198-Month Sentence He Did Get,

15           Because Under Any Of The Plea Agreements, He Had To
             Accept Sentencing Exposure Of Life And Acknowledge

16           That The Court Had The Discretion To Sentence Him Up
             To Life**

17

18  Defendant asserts that he was prejudiced by the 54-month difference

19  between the 198-month sentence he received and the 144-month sentence he *would*

20  *have* received *if* the Court had followed the government's recommendation on the

21  rejected plea offers.  ECF No. 127 at 3 (asserting prejudice because 198 months is

22  a "far cry" from 144 months).

23       Defendant cannot show prejudice because the benefit he claims he lost – a

24  government recommendation of 144 months – was not binding on the Court.  He

25  cannot show that if he had entered one of the plea agreements containing the 144-

26  month joint recommendation, he would have actually gotten a sentence lower than

27  198 months – that is, prejudice under *Strickland*.

28

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 19

Both of the challenged plea agreements contained explicit terms that put Defendant on notice that even with a government recommendation of 144 months, the Court could impose a sentence up to life in prison. *See* Exhibits 1, 2.

Both plea agreements also contained explicit notice that the Court retained discretion to impose any sentence it deemed appropriate:

4.  The Court is Not a Party to this Plea Agreement

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.  sentencing is a matter solely within the discretion of the Court;

b.  the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c.  the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.  the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.  the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.  the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

Exhibits 1 and 2, Paragraph 4.

Defendant cannot show prejudice because even the plea agreements he now claims he *would have taken* put him on explicit notice that the Court had discretion to sentence him up to life – not just 60, or 144, or even 198 months. *See United States v. Alston*, No. 2:20-CR-00113-CDS-EJY, 2024 WL 1554263, at *5 (D. Nev. Apr. 9, 2024) (rejecting prejudice in IAC claim where "the plea agreement expressly advised that 'the district court will be free to exercise its discretion to

impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction,' and the agreement provided that 'the district court does not have to follow the recommendation of either party') (cleaned up); *Curry v. United States*, No. C09-288-RSM, 2009 WL 3423040, at *4 (W.D. Wash. Oct. 22, 2009) (rejecting deficient performance and prejudice prongs of IAC claim where defendant was "informed repeatedly about the maximum sentence for the drug offense and the sentencing court's discretion to disregard the parties' sentencing recommendations").

Based on the information in the plea agreements he claimed he would have taken, Defendant cannot now credibly maintain that he would have accepted those offers if he had only known that Mr. Marchi would not ultimately obtain a sentence of five or twelve years. As an objective matter, either of those plea agreements actually exposed him to life in prison, not 60 or 144 months. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (holding that the prejudicial effect on plea negotiations is determined by objective analysis "without regard for the 'idiosyncrasies of the particular decisionmaker[.]'"). Cementing this assertion is the fact that Defendant ultimately *did* plead guilty to a plea agreement containing the same lifetime exposure as the pleas he now claims he forwent because of Mr. Marchi's IAC. *See* ECF No. 104.

Defendant's plea agreement and the Court's fulsome colloquy make it clear that he was on proper and actual notice of the maximum penalties and all other terms resolving his case. *Id.*; ECF No. 129. He pled guilty, because he was guilty, to a plea agreement containing the same life exposure as the plea agreements he now claims he would have entered. He has failed to show prejudice. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").

Thus, Defendant admits that he was willing to accept a plea agreement in which his sentence could be up to life.  Based on the Court's later plea colloquy to a plea agreement containing life exposure, it is a fair inference (and Defendant, who has the burden, does not argue otherwise) that the Court's colloquy on either of the first two plea agreements would have contained the same notice provisions. In cases involving "defendant's sentencing exposure," the Ninth Circuit has held that "defendants who were properly notified of their sentencing exposure during the plea colloquy could not show prejudice."  *United States v. Young*, No. 23-35297, 2025 WL 1064851, at *1 (9th Cir. Apr. 9, 2025) (citing *Chua Han Mow v. United States*, 730 F.2d 1308, 1311 (9th Cir. 1984) (defendant's claim of ineffective assistance of counsel failed because the "sentencing court adequately informed [defendant] of the maximum possible sentence")); *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir. 1987) (defendant's attorney erroneously indicated the sentences would run concurrently under plea, but defendant "failed to show this act prejudiced him"); *see Doganiere*, 914 F.2d at 168 (holding petitioner "suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court"); *United States v. Vega-Navarro*, 32 F. App'x 470 (9th Cir. 2002) ("Even if the record supported Vega-Navarro's contention, he cannot demonstrate prejudice by the alleged acts or omissions of his counsel because prior to accepting his plea, the court adequately informed him of the maximum possible sentence that could be imposed.").

Defendant knew that he could have received life even if he had taken one of the first two plea offers. He cannot show that he was prejudiced when he forwent those offers and later pled guilty to an agreement containing the same actual exposure contained in those offers.

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

        **b.**      **Defendant Cannot Show That He Was Prejudiced By The 128-Month Difference Between The 60-Month Sentence He Alleges Mr. Marchi Promised He Would Get And The 198-Month Sentence He Did Get, Because Even Greater Disparities Between Predicted Outcome And Actual Outcome Are Insufficient To Demonstrate IAC**

Defendant contends that but for Mr. Marchi's advice to reject the government's plea offers, as well as counsel's "confidence in suppression and of getting five years," Defendant would have pled guilty to a plea agreement containing a 144-month joint recommendation.  ECF No. 126 at 10.  Reading this argument most charitably, if it were true that Mr. Marchi promised Defendant a sentence of 60 months after successful suppression litigation, Defendant could conceivably have been prejudiced by the 128-month delta between the 198 months Defendant received and the 60 months Mr. Marchi promised.

For the same reasons set forth immediately above, Defendant cannot meet his burden of showing actual prejudice: there is genuinely no way to know whether Defendant's suppression litigation would be successful, nor what sentence the Court would have imposed had it been successful.  That is, Mr. Marchi's inability to predict the future was not prejudicial to Defendant.  Counsel's inaccurate sentencing prediction does not constitute IAC, and even larger disparities between promised and actual sentences do not constitute a gross mischaracterization of the likely outcome.  *See Jerome*, 124 F.3d 214 at *4 (delta of 180 months); *Womack*, 497 F.3d at 1002 (delta between 30–40 years and eight life terms); *Garcia,* 909 F.2d at 1348 (delta of 139 months); *see also Preciado v. Hickman*, 48 F. App'x 652 (9th Cir. 2002) (delta between six years and "26 years to life"); *Aragon v. United States*, 963 F.2d 378 (table), at *2 (9th Cir. 1992) (delta between 15 and 40 years).  And because even the challenged plea agreements – just like the agreement Defendant entered – permitted the Court to sentence Defendant up to life, Defendant cannot meet his burden of showing that the decision not to take an agreement containing a joint recommendation of 144 months prejudiced him.

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 23

### c.     Defendant Cannot Show That He Was Prejudiced By Mr. Marchi's Failure To Provide Him With Discovery

Finally, Defendant claims that Mr. Marchi never provided him with discovery.  ECF No. 126 at 8–9.  Even if true, this fails to demonstrate prejudice.

First, "[t]here is no constitutional right to discovery in a criminal case." *United States v. Britt*, 841 F.2d 1130 (9th Cir. 1988) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)).  It is difficult to see how Defendant has demonstrated that his right to effective representation was compromised based on counsel's failure to provide something he had no constitutional right to receive.

Second, Defendant points to only one piece of actual discovery that Mr. Marchi failed to provide him in a manner that he alleges to be prejudicial: a bill of sale for the stolen car Defendant was inside in February 2022.  ECF No. 26 at 9 ("Petitioner requested if he attached 'the bill of sale of the vehicle' that was claimed to be stolen, including the 'release of interest,' also the signed title that was sent via e-mail pertaining to the vehicle that was purportedly stolen on February 11, 2022, he advised that it was all there, but since I was in jail, he was not allowed to be in possession of the information that was in the exhibits") (cleaned up);  ECF No. 125-2 at 7 ("If Mr. Marchi would have gone over the discovery with me and advised me in regards of the lack of the presentment of the ownership of the vehicle, I certainly would not have rejected the 12 year offer and would have advised against the motion for suppression of the evidence.").

This claim fails.  The only relevance of a bill of sale for the car in which Defendant was found – which had been reported stolen – was that it could have helped Defendant establish a reasonable expectation of privacy in the car for purposes of his suppression arguments.  But Defendant cannot show prejudice in Mr. Marchi not providing him with the bill of sale because the Court ruled that it was the registered owner's consent to search, not the bill of sale, that authorized the search of the car, particularly when coupled with Defendant's failure to object:

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 24

So the first search was conducted based on consent from the vehicle owner. I find that law enforcement reasonably relied on the representations that came to them that there was consent from the owner. There's been nothing presented here today that undermines the representations in the reports that the registered vehicle owner who had reported it stolen had given consent to Spokane law enforcement that once the vehicle was found, it could be searched. There was nothing presented here today that undermined that representation, and law enforcement reasonably relied on that in conducting the initial search.

Mr. Marchi indicates that Mr. Kern may have had a reasonable expectation of privacy in the vehicle as well. I don't have enough information at this stage to make a determination on that issue. Mr. Marchi says that there was a bill of sale. That's not before me. That is -- there's a reference to it in a report, but I haven't seen that, so I don't have sufficient information to determine whether Mr. Kern had a reasonable expectation of privacy.

**Even if he did, the fact that there was consent granted by the registered vehicle owner, it was reasonable for law enforcement to rely on that in searching the vehicle, particularly because there was no voiced objection from Mr. Kern.**

ECF No. 89 at 48–49 (emphasis supplied).

Because the Court found the search valid based on consent regardless of Defendant's expectation of privacy, he cannot show how Mr. Marchi providing him the bill of sale would have made any difference – that is, prejudice.

For the remainder of Defendant's claims that Mr. Marchi failed to provide discovery, Defendant has neither articulated what discovery he needed, nor why it is prejudicial that he did not get it.  That is insufficient for him to carry his burden. *See United States v. Head*, No. 2:08-CR-00093-KJM-AC, 2023 WL 6611454, at *3 (E.D. Cal. Oct. 10, 2023) ("Moreover, under the second prong of the *Strickland* test, Head does not identify or describe what discovery counsel withheld that, if shared with Head, could have altered the outcome of his trial. Head has not stated a claim for relief, and the court denies relief on this claim."); *United States v. Caballero-Perez*, No. 2:13-CR-00085-JAD-PAL, 2017 WL

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 25

2214676, at *2 (D. Nev. May 17, 2017) ("Caballero-Perez next alleges that his counsel failed to share discovery materials from the case with him. But he offers no evidence to support this contention. He does not explain what materials were withheld, or how not having these materials prejudiced him. I thus cannot determine that his counsel was ineffective for failing to provide him with anything.").

Finally, Defendant cannot show prejudice where he ultimately pled guilty to a plea agreement containing the same exposure, *after seeing all the discovery*:

> THE COURT: All right. So the last time we were here together there was a discussion of a potential entry of change of plea.
> Given some of Mr. Kern's responses, I wanted to make sure that he had adequately reviewed the underlying materials with new counsel, since there had been a change of counsel in the case.
> Mr. Crook, can you outline for me, what work has been done since we were all last together?
> MR. CROOK: Yes, Your Honor.
> After the hearing, I went and visited Mr. Kern in the Benton County Jail. We spent a couple of hours talking about the case. I also inquired with him as to whether any additional discovery needed to be seen. He indicated that there was some, and I showed him that discovery. Everything was clarified.

ECF No. 129 at 4. Defendant has failed to demonstrate prejudice.

## V.    NO HEARING IS NECESSARY

An evidentiary hearing is not required where, as here, "the files and records conclusively show that the movant is not entitled to relief." *United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998); *see also Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989) ("Where a section 2255 motion is based on alleged occurrences outside the record, no hearing is required if the allegations, viewed against the record, either fail to state a claim for relief or are 'so palpably incredible or patently frivolous as to warrant summary dismissal.'") (quoting *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir. 1985)).

United States' Response to 28 U.S.C. § 2255 Motion – Kern – 26

# VI.    NO CERTIFICATE OF APPEALABILITY SHOULD ISSUE

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court should decline to issue a certificate of appealability as Defendant has not made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000).  No reasonable jurist could disagree with that conclusion.

# VII.    CONCLUSION

Because of Defendant's collateral attack waiver and his failure to establish a basis for his claims of ineffective assistance of counsel, Defendant is not entitled to relief.  Accordingly, Defendant's motion can and should be denied without further proceedings, and no certificate of appealability should issue.

Alternatively, if this Court were to decline to grant the United States' pre-answer motion to dismiss, the United States would request a new 60-day deadline for filing a substantive answer to Defendant's motion, because of the need to move to pierce the attorney-client privilege and obtain a sworn declaration and other evidence from Mr. Marchi.

Dated:  August 8, 2025

Stephanie Van Marter
Acting United States Attorney

*s/ David M. Herzog*
David M. Herzog
Assistant United States Attorney

*s/ Jessica E. Vye*
Jessica E. Vye
Law Clerk

1

## **CERTIFICATE OF SERVICE**

2

      I hereby certify that on August 8, 2025, I electronically filed the foregoing

3

with the Clerk of the Court using the CM/ECF System, which will send

4

notification of such filing to following, and/or I hereby certify that I have mailed

5

by United States Postal Service the document to the following non-CM/ECF

6

participant(s):

7

      Rex Michael Kern

8

      No. 25211-510
      FCI TERRE HAUTE

9

      FEDERAL CORRECTIONAL INSTITUTION
      P.O. BOX 33

10

      TERRE HAUTE, IN 47808

11

12

                            *s/ David M. Herzog*

13

                            David M. Herzog
                            Assistant United States Attorney

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Certificate of Service – 1